## LOIS v. GREAT ATLANTIC & PACIFIC TEA CO.

### No. 87.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1945.

---

Emanuel Lauterbach, of Ossining, N. Y., for plaintiff-appellee.

Weisman, Celler, Quinn, Allan & Spett, of New York City (Murray C. Spett, of New York City, of counsel), for defendant and third party plaintiff-appellant.

Evans, Rees & Orr, of New York City (Fred H. Rees and Alexander Orr, Jr., both of New York City, of counsel), for defendants-appellees Philip H. Fleck, Inc., and James J. Moroney, Inc.

George A. Garvey, of New York City, for defendant-appellee Benjamin A. Acker.

Before L. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff was injured shortly after sundown on the evening of January 12, 1943, when he was walking along the sidewalk in front of a store of the Great Atlantic and Pacific Tea Company in Ossining, N. Y. Dim-out regulations were then in effect and the street was dark. He stumbled over one of a pair of unlighted cellar doors which were open on the sidewalk and fell into the passageway leading to the cellar. He brought this suit against the Great Atlantic & Pacific Tea Company, hereinafter called A. & P. for brevity, in the state court and the action was removed on the petition of the defendant to the District Court because of diversity of citizenship. In due course Benjamin A. Acker, who owned and leased the store building to A. & P., Philip H. Fleck, Inc., a plumbing contractor which had a contract to install coal burning apparatus in place of an oil burner in the cellar, and James J. Moroney, Inc., the subcontractor which performed the work and in so doing made use of the cellar entrance, were brought in as third party defendants, and the plaintiff served an amended complaint charging negligence on their part.

Cross-complaints were filed by A. & P. against the third party defendants and by Acker against A. & P. and the plumbing corporations, and issue was joined on the pleadings. The trial was by jury and resulted in a verdict against A. & P. only and in favor of the other parties. Judgment on the verdict against A. & P. was entered, the plaintiff's complaint against the third party defendants was dismissed on the merits, the cross-complaint of A. & P. against them was dismissed with costs, and the cross-complaint of Acker was withdrawn. A. & P. has appealed.

There was evidence to justify the jury in finding substantially as follows:

The cellar space under the building owned by Acker and leased to A. & P., which the latter operated as a store, was about 2000 square feet of which the landlord reserved all but about 500 square feet. Access to the cellar from the outside was had by an entrance which opened through the sidewalk adjoining the building. At this entrance were a pair of metal doors laid into the sidewalk and extending about four feet out from the side of the building. When closed the doors were in a horizontal position about even with the surface of the sidewalk, but when open they stood vertically above the sidewalk and were supported by a crossbar extending between them at their edges farthest from the building. They were in this position when the plaintiff fell over one of them.

On that day and for several days previously workmen of the subcontractor had been employed in the cellar converting the oil burner to a coal burner. By agreement between Acker and A. & P., the latter had undertaken to supervise this work and to pay one-half of its cost. When the plumbers went to work that morning the cellar doors were open, and they left them open when they quit work that afternoon at about 4:30. As they were leaving, one of them told Tierney, the store manager, that before he went home he ought to attend to the fire in the burner. It was customary

for Tierney to close the store at 6 o'clock each afternoon and to close these cellar doors or to have them closed by some one else. Soon after 6 o'clock on the afternoon the plaintiff was hurt Tierney locked the doors at the street entrance to the store and then noticed that the cellar doors were open but did not close them. He did not think there was any one in the cellar, but he intended to go to the cellar himself to check the fire before going home. Before he did so and within about half an hour after he locked the entrance doors, the plaintiff met with his accident.

The issues as to the negligence of A. & P. and of the third party defendants were submitted to the jury in a charge to which no exception was taken, but the appellant now seeks a reversal of the judgment because of the court's refusal to comply with certain specific requests to charge. As there was obviously ample evidence to support the verdict that A. & P. was negligent we will go directly to a consideration of these requests, which deal in part with the legal relationship of A. & P. to the plaintiff and in part with that of the third party defendants to the plaintiff and to A. & P.

■■ The request to charge that A. & P. was not an insurer of the safety of the plaintiff but was required merely to exercise reasonable care with respect to him was properly denied, as the subject matter had been adequately covered in the charge. The court had told the jury that the owner was not an insurer and was bound only to use reasonable care, and had followed that instruction by saying, "Now what I have said about the owner in this branch of the case also applies to the defendant, The Great Atlantic & Pacific Tea Co. That is, to use reasonable care to keep the premises safe." The court's failure to say in terms that the A. & P. also "was not an insurer" cannot be taken to be error when this meaning was so clearly implied. In the same situation is the appellant's bald request to charge that the fact that the cellar doors were open "in and of itself does not constitute negligence" on the part of A. & P. That was implicit in the charge as given.

■■ So, too, it was enough to charge the jury in respect to the plaintiff's contributory negligence that he was bound to use care to be "measured and determined by the circumstances of the case. That means the whole circumstances there that night, all of the circumstances which have been testified to here in this case." In view of this instruction the court's refusal to charge in the language of a specific request to the effect that the plaintiff because of the dim-out "was required to exercise a greater degree of care and caution than he would ordinarily" was not an abuse of discretion amounting to error. That was one of the circumstances the jury had been directed to consider. And the same is true as to the language of the requested instruction to the effect that the plaintiff would be guilty of contributory negligence if when he fell he was looking into the store window and "was not looking in front of him." All this was made plain enough in the charge as given.

■■ The appellant also argues that the verdict against it and that in favor of the landlord were so inconsistent that the judgment must be reversed, and in support of the contention relies on New York cases of which Rowell v. John Hutzler Lumber Co., Inc., 228 App.Div. 158, 239 N.Y.S. 192, is an example. It is doubtless true that an owner in possession and control of a building has a non-transferable obligation to take reasonable precautions to keep doorways opening from his premises onto a public street in safe condition. Trustees of Village of Canandaigua v. Foster, 156 N.Y. 354, 50 N.E. 971, 41 L.R.A. 554, 66 Am.St. Rep. 575; Kirby v. Newman, 239 N.Y. 470, 147 N.E. 69. And this owner had reserved the greater part of the cellar space. But while the owner did have notice that work was being done in the cellar and knew or should have known that the doors would be open while that was being done there was no evidence that he had notice that the tenant in charge of supervising that work or any one else had negligently left the doors open after dark. It was not inconsistent therefore for the jury to find the tenant negligent and also find that the owner, without notice that the doors had been left open, was not. See Martin v. Pettit, 117 N.Y. 118, 22 N.E. 566, 5 L.R.A. 794; Siegel v. Gordon, 278 N.Y. 416, 16 N.E.2d 387; Tilem v. Alon Holding Corp., 276 N.Y. 531, 12 N.E.2d 461.

■■ The appellant's contention that there should be a reversal because its cross-complaint against the plumbers was dismissed after the jury had failed to find that they were negligent is likewise without substance. As we have seen, there was evidence on which the jury could have found

that the plumbers merely left the doors as they found them that morning and that the appellant's manager knew that in ample time before the accident to have shut them. Whether or not the plumbers were negligent was a jury question and the verdict disposed of that issue. We are not, therefore, called upon to decide whether in view of Schwartz v. Merola Bros. Const. Corp., 290 N.Y. 145, 48 N.E.2d 299; Walters v. Rao Electrical Equipment Co., 289 N.Y. 57, 43 N.E.2d 810, 143 A.L.R. 308; and Employers' Liability Assur. Corp. v. Post & McCord, Inc., 286 N.Y. 254, 36 N.E.2d 135, the appellant could have maintained its cross-complaint against them had the jury found them negligent.

Judgment affirmed.